# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

JAQUAY HILER,

      Plaintiff,

    v.                                     Case No. 08-C-121

PETER ERICKSON, OFFICER DEBROUX,
OFFICER FORD, OFFICER TILOT,
CAPTAIN SCHULTZ, SGT. HAMILTON and
OFFICER BENDTSCHNERDE,
      Defendants.

## ORDER

    Plaintiff, who is incarcerated at Jackson Correctional Institution, lodged a pro se civil rights complaint under 42 U.S.C. § 1983, alleging that his civil rights were violated. This matter comes before the court on plaintiff's petition to proceed in forma pauperis.

    Pursuant to 28 U.S.C. § 1915(b)(1), plaintiff is required to pay the statutory filing fee of $350.00 for this action. If a prisoner does not have the money to pay the filing fee, he or she can request leave to proceed in forma pauperis. To proceed with an action in forma pauperis, the prisoner must complete a petition and affidavit to proceed in forma pauperis and return it to the court with a certified copy of the prisoner's trust account statement showing transactions for the prior six months. The court then assesses and, when funds exist, collects from the plaintiff at the time the action is filed an initial partial filing fee of 20% of the average monthly deposits to or the average monthly balance in the prisoner's trust account for the six-month period immediately preceding the filing of the complaint.

In this case, the plaintiff has filed a certified copy of his prison trust account statement for the six-month period immediately preceding the filing of his complaint. The prisoner has been assessed and paid an initial partial filing fee of $4.80.

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. Denton v. Hernandez, 504 U.S. 25, 31 (1992); Neitzke v. Williams, 490 U.S. 319, 325 (1989); Hutchinson ex rel. Baker v. Spink, 126 F.3d 895, 900 (7th Cir. 1997). The court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. Neitzke, 490 U.S. at 327. "Malicious," although sometimes treated as a synonym for "frivolous," "is more usefully construed as intended to harass." Lindell v. McCallum, 352 F.3d 1107, 1109-10 (7th Cir. 2003) (citations omitted).

To avoid dismissal for failure to state a claim, the complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). It is not necessary for the plaintiff to plead specific facts; his statement need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Erickson v. Pardus, 127 S. Ct. 2197, 2200 (2007) (citations omitted). In deciding whether the complaint states a claim, the court must accept as true all of the factual allegations

contained in the complaint. Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1965 (2007). There is no heightened pleading requirement for pro se prisoner civil rights complaints. Thomson v. Washington, 362 F.3d 969, 970-71 (7th Cir. 2004). Of course, if a complaint pleads facts that show that a plaintiff does not have a claim, the complaint should be dismissed "without further ado." Id. at 970.

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege: 1) that he or she was deprived of a right secured by the Constitution or laws of the United States, and 2) that the deprivation was visited upon the plaintiff by a person acting under color of state law. Gomez v. Toledo, 446 U.S. 635, 640 (1980). The court is obliged to give the plaintiff's pro se allegations, however inartfully pleaded, a liberal construction. See Erickson, 127 S. Ct. at 2200 (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

> Plaintiff alleges:
>
> March 11, 2005 to March 14, 2005 each defendants [sic] purposely left me in cell 617 in deplorable conditions, the cell 617 it was contaminated with urine, feces and flooding water all over the cell 617, each defendants [sic] ignored the situation and offered no remedy to improve the conditions in cell 617, each defendants [sic] place Nutra Loaf bread in contaminated urine, feces and flooding water and which I was poison from eat contamination food Nutra Loaf bread, each defendants [sic] knew the cell 617 was unsafe and unsanitary conditions[.] I have reason believe the bone through out my body been slowly emaciate[d] from infection name osteomyelitis due to severe neglect I suffer in cell 617.

(Compl. ¶ IV.A.) Next, plaintiff refers to Conduct Reports 1687614, 1687615, 1647885, and 1687621 that he received on March 11, 12, 13, and 14, 2005, respectively. Plaintiff states:

> Conduct Report #1687614
> Officer DeBroux wrote this conduct report on March 11, 2005 at 7:10am. The officer state that I did not receive the breakfast nor the bag lunch meal because of the unsanitary conditions of my cell.

3

The writing of this conduct report at 7:10am shows the intent by segregation staff that the lunch bag meal was not going to be served. It also shows the indifference of the segregation staff to my physical health by not removing me from my contaminated cell.
\*\*Lack of food and exercise created an extreme deteriorated mental state. My behavior became bizarre and self-destructive because of the actions of the segregation staff on March 11, 2005.

Conduct Report #1687615
Officer Ford wrote this conduct report on March 12, 2005 at 7:45am. The officer stated in the conduct report how unsanitary my cell was, however, I was not removed from my cell. When served my breakfast bag meal, Officer Ford placed the bag meal on top of the trap door which was contaminated with feces. The bag has been kept as evidence to this incident.
\*\*My mental state continued to deteriorate. Lack of physical exercise and contaminated food lent to a continued self-destructive behavior.

Conduct Report #1647885
Officer Tilot wrote this conduct report on March 13, 2005 at 8:00am. The officer stated in the conduct report that he viewed that I was in a flooded cell and that my cell was unsafe because it was contaminated with feces. He could not enter himself because of the contamination, however, I was not removed from my cell. Officer Tilot reported the condition of my cell to Sgt. Hamilton.

Conduct Report #1687621
Sgt. Hamilton wrote this conduct report on March 14, 2005 at 7:30am. Sgt. Hamilton stated in this conduct report that my cell was unsafe. However, Sgt. Hamilton along with Lt. Swiekatowski refused to move me to a clean cell.
\*\*My mental state continued to deteriorate. Lack of physical exercise and unsafe living conditions lent to a continued self-destructive behavior.

(Compl. at unpaginated 4.)

In addition, plaintiff attached copies of Conduct Reports 1687614, 1687615, 1647885 to the complaint. See Fed. R. Civ. P. 10(c) ("A copy of a written instrument attached to a pleading is a part of the pleading for all purposes"). Conduct Report 1687621 is not attached to the complaint, however, Conduct Report 1647894, which plaintiff also received on the morning of March 14, 2005, is attached. A review of the conduct reports

reveals that on March 11, 2005, defendant DeBroux completed Conduct Report 1687614 and stated as follows:

> On the above date and time while working in the program segregation unit I approached cell 617 housed by inmate Hiler, Jaquay #345498 to offer him his breakfast "bag lunch." On attempting to give inmate Hiler his meal I had noticed feces smeared on the food trap and windows of his cell. I informed Hiler that I would not deliver him his bag with his cell in the condition it was in, due to unsafe and unsanitary conditions. Inmate Hiler informed me his water was turned off. I told him that I would have his water turned back on so he could start cleaning his cell and that I would get cleaning supplies to him as soon as possible, he agreed. Inmate Hiler's "bag lunch" was then saved until his cell was cleaned. I informed segregation control to turn on inmate Hiler's water so he could start cleaning his cell, c/o Figeuroa said he would turn Hiler's water on and monitor him cleaning. After inmate Hiler's water was turned on he began to flood his cell, c/o Figeuroa then disabled the water in cell 617. Inmate Hiler's actions for noon meal were the same as breakfast meal. He smeared feces again along with the existing feces and when told by me to clean it up so he would be able to eat his meal, he refused. Inmate Hiler's meals were saved until his cell was in a safe and sanitary condition to serve his meals, but his cell remained unclean for the remainder of the day I worked.

(Compl. at unpaginated 6-7.) On March 12, 2005, defendant Officer Ford completed Conduct Report 1687615 in which he charged that while picking up bags and trays after the breakfast meal, plaintiff refused to return his bag meal stating that the bag was evidence and he was keeping it. (Compl. at unpaginated 8.) On March 13, 2008, defendant Officer Tilot completed Conduct Report 1647885 stating:

> On the above date and time, I Officer Tilot attempted to pick up the Nutra-Loaf bag from cell 617 occupied by inmate Hiler (#345498). As I went through the outer door to cell 617, I observed that inmate Hiler had smeared what appeared to be Nutra-Loaf all over the inner cell door and window. I ordered Hiler to place the empty paper bag by his lower trap and kneel at the back of his cell. Hiler ignored my orders. I then observed inmate Hiler standing by his toilet and splashing water from his toilet onto the floor with his hand. I ordered Hiler to stop flooding his cell and place his empty bag by the lower trap. Again, Hiler did not comply with my orders. At this point, I informed Sgt. Hamilton of this situation. Sgt. Hamilton informed Cpt. Schultz, who in turn placed Hiler on water restriction.

(Compl. at unpaginated 9.) On March 14, 2008, defendant Officer Bendtschnerde completed Conduct Report 1647893 which states:

> On the above date and time I ordered inmate Hiler #345498 a direct order to clean his cell. Inmate Hiler had smeared what appeared to be his Nutra Loaf on his window and walls of his cell making it difficult to see in his cell. Inmate Hiler also had thrown pieces of Nutra Loaf out of his door into the sallyport area of cell 617. Upon giving inmate Hiler a direct order to clean inmate Hiler refused by saying "No." I again gave inmate Hiler several direct orders to clean in which he refused.

(Compl. at unpaginated 10.)

To plead an Eighth Amendment claim for unconstitutional conditions of confinement, an inmate need only allege that prison officials knowingly denied him "the minimal civilized measure of life's necessities." Henderson v. Sheahan, 196 F.3d 839, 845 (7th Cir. 1999) (internal quotation marks and citation omitted). Those necessities include adequate shelter, clothing and hygiene items. See Gillis v. Litscher, 468 F.3d 488, 493 (7th Cir. 2006). In order to prove his claim, an inmate must produce evidence that, objectively, the conditions fell below constitutional thresholds and that, subjectively, the defendants were aware of those conditions but did nothing to correct them. See Farmer v. Brennan, 511 U.S. 825, 834, 837 (1994); Gillis, 468 F.3d at 491. But proof is not necessary at this stage; rather, the complaint need only "give enough detail to illuminate the nature of his claims and allow defendants to respond." George v. Smith, 507 F.3d 605, 608 (7th Cir. 2007).

It is well established that a cell with feces smeared inside of it can give rise to an Eighth Amendment claim. In Johnson v. Pelker, 891 F.2d 136, 139-40 (7th Cir. 1989), the court held that a prisoner's allegation that he had been placed in a cell for three days without running water and in which feces had been smeared on walls, while his requests for cleaning supplies and for water to be turned on were ignored, stated an Eighth

6

Amendment claim. Likewise, the recent case of <u>Vinning-El v. Long</u>, 482 F.3d 923, 924 (7th Cir. 2007), reversed the district court's grant of summary judgment to defendant prison guards regarding a prisoner's Eighth Amendment conditions of confinement claim. In that case, after a fight with his cellmate the prisoner was stripped of his clothing and placed in segregation. <u>Id.</u> The floor of his cell was covered with water, the sink and toilet did not work, and the walls were smeared with blood and feces. <u>Id.</u> The prisoner was forced to remain in the cell without a mattress, sheets, toilet paper, towels, shoes, soap, toothpaste, or any personal property, for six days. <u>Id.</u>; <u>see</u> <u>also</u> <u>Jackson v. Duckworth</u>, 955 F.2d 21, 22 (7th Cir. 1992) (prisoner held in cell that allegedly was filthy and smelled of human waste, lacked adequate heating, contained dirty bedding, and had rusted toilets, no toilet paper, and worms in the drinking water); <u>Isby v. Clark</u>, 100 F.3d 502, 505-06 (7th Cir. 1996) (prisoner held in cell that allegedly was "filthy, with dried blood, feces, urine and food on the walls").

However, this case is distinguishable from the above line of cases. First, plaintiff does not allege that he was placed in an unsanitary cell. The attached conduct reports indicate, and plaintiff's complaint acknowledges in referring to the reports, that plaintiff contaminated his own cell by smearing feces and food on the walls and door. Second, plaintiff does not allege that his cell was unsanitary in any way other than from his own actions. Third, the attached conduct reports indicate that plaintiff was provided an opportunity, and subsequently ordered, to clean his cell and steps were taken to facilitate the cleaning. However, plaintiff refused to clean his cell. After three days, after plaintiff repeatedly refused to clean his cell, plaintiff was moved from that cell. Plaintiff's complaint does not contradict these reports in any way.

Thus, this case is similar to Rodriguez v. Briley, 403 F.3d 952 (7th Cir. 2005). In that case, an inmate was denied between 300 and 350 meals over the course of 18 months because he refused to comply with a rule requiring him to store his beginnings in a storage box before leaving his cell. Id. The court rejected the inmate's Eighth Amendment claim, stating that "deliberate noncompliance with a valid rule does not convert the consequences that flow automatically from that noncompliance into punishment." Id. at 952-53. "[B]y failing to comply with a reasonable condition on being allowed to leave his cell, and as a result missing out on meals, Rodriguez punished himself." Id.

Plaintiff's complaint and the attached conduct reports show that plaintiff essentially punished himself by creating an unsanitary condition in his cell and refusing a direct order to clean it up.[1] See Garrett v. Martin, 97CV28, 1999 U.S. Dist. LEXIS 18911, at *39 (E.D. Va. Apr. 1, 1999) (stating that an inmate who smeared his own feces on his body had "no right to complain" for the prison's failure to promptly clean it up because the inmate "created his own misery . . . not the institution"). Thus, plaintiff has shown that he is not entitled to relief. In an unpublished decision, the Seventh Circuit has found that the district court may dismiss such a case upon screening. Sanders v. Bertrand, 72 Fed. Appx. 442 (7th Cir. 2003). In Sanders, like the present case, the plaintiff did not plead insufficient facts. Rather, by attaching conduct reports that showed the plaintiff was not entitled to relief, he had alleged "'facts which show that he has no claim, even though he was not required to allege those facts.'" Id. at 444 (quoting Gutierrez v. Peters, 111 F.3d 1364, 1374 (7th Cir. 1997)). I agree with this assessment as to the present case.

---

[1] I note that plaintiff's complaint does not attempt to raise any sort of claim of denial of mental heath or other medical care.

8

**Therefore,**

**IT IS ORDERED** that plaintiff's motion for leave to proceed in forma pauperis (Docket #2) is **GRANTED**.

**IT IS FURTHER ORDERED** that this action is **DISMISSED** pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1) for failure to state a claim.

**IT IS FURTHER ORDERED** that the Clerk of Court document that this inmate has brought an action that was dismissed for failure to state a claim under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1).

**IT IS FURTHER ORDERED** that the Clerk of Court document that this inmate has incurred a "strike" under 28 U.S.C. §1915(g).

**IT IS FURTHER ORDERED** that the Secretary of the Wisconsin Department of Corrections or his designee shall collect from the plaintiff's prison trust account the $345.20 balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the prisoner's trust account and forwarding payments to the clerk of the court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. § 1915(b)(2).  The payments shall be clearly identified by the case name and number assigned to this action.

**IT IS FURTHER ORDERED** that the Clerk of Court enter judgment accordingly.

**IT IS ALSO ORDERED** that a copies of this order be sent to the warden of the institution where the inmate is confined and to Corey F. Finkelmeyer, Assistant Attorney General, Wisconsin Department of Justice, P.O. Box 7857, Madison, Wisconsin, 53707-7857.

**I FURTHER CERTIFY** that any appeal from this matter would not be taken in good faith pursuant to 28 U.S.C. § 1915(a)(3) unless the plaintiff offers bonafide arguments supporting his appeal.

Dated at Milwaukee, Wisconsin, this 21 day of April, 2008.

/s
LYNN ADELMAN
District Judge